AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| United States of America<br>v.<br>Sabas Enrique SALOMON-Castro<br>and Samuel ASTORGA-Urias<br><br>*Defendant(s)* | Case No. **23 MJ 1683** |

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of November 25, 2023 in the county of Cibola in the _____ District of New Mexico, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 United States Code § 841(a)(1) and § 841(b)(1)(A) | Possession with intent to distribute 5 kilograms and more of a mixture or substance containing a detectable amount of cocaine |
| 21 United States Code § 846 | Conspiracy |

This criminal complaint is based on these facts:

See attached affidavit, which is incorporated by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Victor Avila, Special Agent (HSI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/26/2023

_____
*Judge's signature*

City and state: Albuquerque, New Mexico    Jennifer M. Rozzoni, U.S Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Victor Avila, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. Your Affiant is a Special Agent (SA) with the Department of Homeland Security, U.S. Immigration & Customs Enforcement (ICE), Homeland Security Investigations (HSI), and has been employed by ICE as such since April 2018. Prior to Affiant's position with ICE, Affiant was a Border Patrol Agent with the United States Customs and Border Protection from July 2012 until April 2018. Your Affiant is currently assigned to the Assistant Special Agent in Charge, Albuquerque, where it is your affiant's duties to investigate narcotics investigations, financial crimes, false and fraudulent use of identification documents, Immigration law violations and other violations of the United States Code of Titles 18 and 21.

2. Your Affiant successfully completed eleven weeks of Criminal Investigator Training at the Federal Law Enforcement Training Center in Glynco, Georgia (FLETC). In addition, your Affiant completed 17 weeks of Border Patrol Agent Training with United States Border Patrol Academy at FLETC (Artesia, NM). Your Affiant has received various training in investigating and enforcing immigration and customs statutes. Your Affiant holds a Bachelor's Degree in Social Science from The Evergreen State College, and a Master of Criminal Justice Administration and Security Degree from University of Phoenix.

3. Your Affiant has received extensive training and practical experience pertaining to federal criminal procedures, federal criminal statutes, United States Immigration and Nationality law, United States Customs laws and regulations, and other federal and state laws pertaining to, but not limited to: Alien Smuggling/Human Trafficking, fraudulent document manufacture and

sales; the importation and distribution of controlled substances, narcotics smuggling, firearms, commercial fraud, immigration, and conspiracy.

4.      The following information relating to the investigation of Sabas Enrique SALOMON-Castro (hereinafter referred to as "SALOMON") and Samuel ASTORGA-Urias (hereinafter referred to as "ASTORGA") is personally known to Your Affiant based on his own investigation, training and experience, or has been related to Your Affiant by other individuals, including law enforcement officers involved in the investigation whom Your Affiant believes to be reliable and Your Affiant's review of investigative reports. This affidavit is submitted for the limited purpose of establishing that there is probable cause to believe that SALOMON and ASTORGA have committed the following felony violations: possession with intent to distribute five (5) kilograms and more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and conspiracy to commit that crime in violation of 21 U.S.C. § 846. This affidavit therefore does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

5.      On November 25, 2023, New Mexico State Police Officer and HSI Task Force Officer (TFO) Julian Armijo, was on duty in full uniform, displaying his badge of office. Officer Armijo was in a fully marked New Mexico State Police Unit # 469, within the county of Cibola, State of New Mexico. At approximately 10:35 a.m. Officer Armijo was traveling east bound on Interstate 40 (I-40). He observed a gray in color passenger car traveling ahead of his marked unit in the right lane of traffic. While conducting the same direction traveling radar, Officer Armijo observed the vehicle traveling 84 mph in a posted 75 mph zone. As Officer Armijo continued to approach the vehicle, he observed the vehicle have an Arizona registration and license plate of

MKA5PR. Officer Armijo positioned his marked unit behind the vehicle and activated his emergency lights. Officer Armijo initiated a traffic stop on Interstate 40 at approximately the 84-mile post.

6. Officer Armijo exited his marked unit and approached the vehicle on the passenger side. Officer Armijo contacted the driver, identified later as SALOMON and the front passenger, later identified as ASTORGA. Officer Armijo advised SALOMON of the reason for the traffic stop requested his driver's license, registration, and proof of insurance. SALOMON provided the requested documents, and Officer Armijo advised him he was going to provide him a written warning. Officer Armijo asked SALOMON to step out of the vehicle and follow him back to the marked unit. For officer safety, Officer Armijo patted down SALOMON to ensure he didn't have any weapons. Officer Armijo asked SALOMON to have a seat in the front passenger seat of the marked unit.

7. Once in his marked unit, Officer Armijo began filling out the written warning. Officer Armijo questioned SALOMON as to where he was going, and SALOMON replied, "to New Mexico." Officer Armijo asked SALOMON which part of New Mexico he was traveling to, and SALOMON replied he did not know where. Officer Armijo questioned SALOMON where he and ASTORGA came from, and SALOMON replied, Phoenix Arizona. SALOMON indicated he and ASTORGA were headed to New Mexico for work. Officer Armijo asked SALOMON who the front passenger in the vehicle was and SALOMON replied, he was a friend from work. Officer Armijo asked SALOMON how long he had known his friend and SALOMON replied, "about a month." Officer Armijo asked SALOMON who the vehicle's owner is because Officer Armijo noticed SALOMON was not the registered owner. SALOMON replied, the vehicle belonged to his brother who was living in Phoenix Arizona. Officer Armijo asked SALOMON

what his brother's name was, and SALOMON replied, "Jesus Salomon Castro." Officer Armijo questioned SALOMON further about his itinerary and length of stay in New Mexico. SALOMON replied, he was going to be working in New Mexico and he could not provide a length of time. Officer Armijo advised SALOMON he was going to check some numbers on the vehicle and asked SALOMON to step out and stand by the front passenger tire of his marked unit.

8. As Officer Armijo was conducting a vehicle identification number (VIN) check, he contacted ASTORGA. Officer Armijo advised ASTORGA he had some questions for him and if he would be willing to speak with him. ASTORGA replied in the affirmative. Officer Armijo questioned ASTORGA about his itinerary. ASTORGA replied he was traveling to New Mexico. Officer Armijo asked ASTORGA where in New Mexico he and SALOMON were traveling to, and ASTORGA replied he didn't know he and was just riding along. Officer Armijo asked ASTORGA who the driver is, and ASTORGA replied that SALOMON is his friend. Officer Armijo asked ASTORGA what SALOMON's name is, and ASTORGA replied that he didn't know. Officer Armijo asked ASTORGA how long he had known SALOMON and he said for "a month." Officer Armijo, believing ASTORGA and SALOMON had conflicting stories, returned to his marked unit, and finished the written warnings for SALOMON. Officer Armijo provided SALOMON all his documents, including the written warnings for speeding and no driver's license. Officer Armijo handed these documents to SALOMON and stated in the Spanish language, "es todo (that's it)," to which SALOMON replied in the Spanish language, "muchas gracias (thank you very much)."

9. Officer Armijo believing a crime was afoot, and prior to SALOMON's departure from the marked unit, informed SALOMON he had some additional questions for him.

SALOMON replied, "Mande?" This is a polite way to state, "what?" Officer Armijo interpreted SALOMON's gesture as a willingness to answer further questions.

10. Officer Armijo asked SALOMON about his intended length of stay in New Mexico, to which SALOMON replied, a month. Officer Armijo asked SALOMON about his and ASTORGA's reason for being in New Mexico, to which SALOMON replied, for work. Officer Armijo asked SALOMON about his family in Phoenix to which he replied, he only had a brother living there. Officer Armijo asked SALOMON who the vehicle belonged to, and he replied, his brother. Officer Armijo asked SALOMON if there was anything illegal in the vehicle to which he replied in the negative. Officer Armijo asked if there was any marijuana, cocaine, methamphetamines, heroin, or fentanyl to which SALOMON replied in the negative. Officer Armijo asked SALOMON if there were any firearms or large amounts of money over $10,000 to which he replied in the negative. Officer Armijo advised SALOMON he wanted to search the vehicle and if that was ok to which SALOMON replied in the affirmative. Officer Armijo told SALOMON he wanted to search the entire vehicle, inside and out, to which SALOMON replied in the affirmative. Officer Armijo asked SALOMON if he had any luggage in the vehicle and SALOMON replied, a black bag. Officer Armijo asked him if he could search the black bag to which SALOMON replied in the affirmative. Officer Armijo asked SALOMON if the passenger had luggage and he replied, yes. SALOMON was asked to stand off to the side of the road and away from the vehicle and traffic.

11. Officer Armijo contacted ASTORGA, who was seated in the vehicle, and asked him to step out of the vehicle. Officer Armijo asked ASTORGA if there were any drugs in the vehicle and he replied in the negative. Officer Armijo asked ASTORGA if he had luggage in the vehicle to which ASTORGA replied in the affirmative. Officer Armijo asked for consent to

search ASTORGA's luggage and he replied in the affirmative. Officer Armijo asked ASTORGA to stand off to the side of the road and away from traffic and the vehicle while it is searched. Officer Armijo began a systematic search of the vehicle by searching the rear seat area first. Officer Armijo located a large bag behind the driver seat on the floorboard. Inside the bag, there were several large vacuumed sealed brick-like bundles. Based on his training and experience, the bundles appeared to be narcotics. Officer Armijo drew his department issued duty weapon and ordered SALOMON and ASTORGA to put their hands up. SALOMON and ASTORGA were detained, placed in handcuffs, and escorted to the passenger side of Officer Armijo's marked unit to await a secondary officer who was enroute to assist.

12. Officer Armijo returned to search the rear seat of the vehicle and located a second large bag behind the passenger seat on the floorboard. The bag also contained several large vacuumed sealed brick-like bundles. Based on his training and experience, these bundles appeared to be additional narcotics.

13. SALOMON, ASTORGA, the vehicle, and the narcotics were transported to the New Mexico State Police office in Milan, New Mexico for further processing. Shortly thereafter, HSI Special Agent V. Avila arrived at the office. SA Avila read both SALOMON and ASTORGA their Miranda rights and initiated separate interviews.

14. There were twenty-two (22) black, vacuum sealed bundles weighing a total of 26.57 kilograms. SA Avila and Officer Armijo carefully field tested one bundle, which resulted positive for cocaine. SALOMON and ASTORGA were transported to the Cibola County Detention Center and charged for Possession with Intent to Distribute and Conspiracy.

**CONCLUSION**

15.     Based on the forgoing information, your affiant believes there is probable cause to believe that SALOMON and ASTORGA have committed the following violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being possession with intent to distribute 5 kilograms and more of a mixture or substance containing a detectable amount of cocaine, and 21 U.S.C. § 846 Conspiracy.

16.     This Affidavit has been reviewed and approved by AUSA Timothy Vasquez.

_____
Victor Avila
Special Agent
Homeland Security Investigations


Signed and telephonically sworn this 26th day of November 2023.

_____
Jennifer M. Rozzoni
United States Magistrate Judge